UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THE ROMANTICS a/k/a MASTER BEAT, INC.; WALLY PALMAR; MIKE SKILL; and COZ CANLER, | Case No. 07-14969 |
| | Honorable Nancy G. Edmunds |
| Plaintiff(s), | |
| v. | |
| ACTIVISION PUBLISHING, INC.; HARMONIX MUSIC SYSTEMS, INC.; REDOCTANE, INC.; and WAVEGROUP SOUND, | |
| Defendant(s). | |

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [2]**

On November 20, 2007, Plaintiffs filed a motion seeking a preliminary injunction enjoining Defendants, during the pendency of this action, from advertising, offering for sale, selling, distributing or otherwise making or selling the video game "Guitar Hero Encore: Rock's the 80s" (the "Game"), or otherwise using the identities, persona, or allegedly distinctive sound of Plaintiffs in connection with the Game. On December 18, 2007, the Court heard argument on Plaintiffs' motion.

Having given due consideration to the parties' written and oral arguments, the Court hereby DENIES the motion in its entirety.

**I.	Facts**

**A.	The Defendants and the Game**

The Game is a part of the "Guitar Hero" video game franchise which includes a series of games, guitar shaped game controllers, accessories and merchandise under the "Guitar Hero" trademark.  This franchise has been very successful, winning numerous accolades and becoming the top selling franchise for console video games as of September 2007.

The Game is a complex artistic work combining visual, audio and narrative elements for which Defendants spent months developing the unique theme and technology.  The Game allows players to pretend they are playing guitar in a rock and roll band.  Play begins as players choose among options such as character, costume, and model of guitar, and then simulate the guitar play of various songs by correctly timing the pressing of fret buttons and strum bars on a guitar-like controller.  The Game includes thirty songs from the 1980s to add to the realistic experience of playing in a rock band from that era.  Each song in the Game has a level of difficulty, and only after reaching a certain proficiency on a song can a player advance to another more difficult song.  The graphic video elements of the Game require complex synchronization with each song to enable the realistic simulation of guitar play.

Defendant Activision Publishing, Inc. ("Activision"), the distributor of the Game and the parent of Defendant RedOctane, Inc., the publisher of the Game, obtained a valid nonexclusive synchronization license from EMI Entertainment World, Inc., the owner of the copyright in the musical composition entitled "What I Like About You" (written and originally recorded in 1979 by the band, The Romantics,  and published in

1980) (the "Song"). A synch license, in the context of a video game, permits Defendants to make a new recording of the underlying composition and to use that recording in synchronization with visual images in the video game to enable game play. In accordance with this license, Defendant WaveGroup Sound ("WaveGroup") recorded a new version of the Song which was incorporated, or synchronized, into the Game. The Game was commercially released in July 2007.

While playing the Game, a player can encounter the Song or any reference to The Romantics only if the player obtains an advanced player status. Theoretically, a player could play the Game and never reach the advanced level of play necessary to encounter the Song among the thirty tracks included in the Game. Even when a player encounters the Song, it is part of the content in the Game, and is clearly identified by the Song title and the words "as made famous by the Romantics," thus informing players and onlookers that The Romantics are not actually performing the Song. Defendants have never used the Song for the purpose of advertising or marketing the Game, and neither the name of Plaintiffs' band nor any of the names of the individual Plaintiffs appear on the product packaging.

Activision is one of the leading international publishers of interactive entertainment software products and has worked with numerous famous musicians to develop versions of the Game. Plaintiffs' proposed injunction would cause irreparable harm to the ongoing sales activities and reputation of Activision.

B. The Plaintiffs and The Song

Plaintiffs Wally Palmar, Mike Skill, and Coz Canler are current members of the rock band The Romantics. The Romantics created the original master recording

embodying the Song in 1979, which was released in 1980.  Not all Plaintiffs participated in the master recording of the Song and the lead singer on the master recording of the Song is no longer with The Romantics, nor is he a party to this action.  Plaintiffs do not allege that they currently own any rights in the Song.

The Song has appeared ubiquitously in popular culture for the past two decades, and is frequently used in commercials and films.  Plaintiffs contend, but have proffered no evidence, that a substantial number of ordinarily prudent consumers of Defendants' Game have been, or are likely to be in the future, confused, deceived, or mistaken about whether the Plaintiffs sponsored or endorsed the Game.

Plaintiffs seek a preliminary injunction against Defendants to prevent the manufacture, distribution, sale, or marketing of the Game during the pendency of the civil action Plaintiffs filed against Defendants for the right of publicity, Lanham Act, unfair competition and unjust enrichment claims.  Although Plaintiffs seek injunctive relief, Plaintiffs' counsel has publicly admitted that Plaintiffs want to receive money for the alleged harm caused to them by the use of the Song in the Game.

## II.     Analysis

Plaintiffs are not entitled to a preliminary injunction under the Sixth Circuit's well-established four-factor test.  Under this test, the following factors must be balanced: 1) whether Plaintiffs have shown a strong or substantial likelihood of success on the merits; 2) whether Plaintiffs have demonstrated irreparable injury; 3) whether the issuance of a preliminary injunction would cause substantial harm to others; and 4) whether the public interest is served by the issuance of an injunction.  Capobianco v. Summers, 377 F.3d 559, 561 (6th Cir. 2004).  See also Mich. State AFL-CIO v. Miller,

103 F.3d 1240, 1249 (6th Cir. 1997); Charter Twp. of Van Buren v. Adamkus, 965 F. Supp. 959, 963 (E.D. Mich. 1997).

### A. Plaintiffs Cannot Establish a Likelihood of Success on the Merits

Plaintiffs have failed to meet their burden of satisfying each of the requirements necessary for the Court to grant a preliminary injunction for their claims alleging (1) violation of their right of publicity under Michigan law; (2) false endorsement in violation of the Lanham Act, 15 U.S.C. § 1125; and (3) unfair competition under Michigan law. Plaintiffs' complaint also purports to set forth a count for unjust enrichment, but Plaintiffs have not sought injunctive relief under this count.

#### 1. Right of Publicity Claim

Plaintiffs have not made the requisite showing that there is a likelihood of success on the merits for their state law claim of a violation of the right of publicity. Under the circumstances of this case, this claim would be governed by Michigan law. However, Michigan has never recognized right of publicity in the sound of a voice, even if distinctive, nor has it recognized a right of publicity for a combination of voices, and thus Plaintiffs fail to state a cognizable claim for violation of the right of publicity. Moreover, as indicated above, not all of the Plaintiffs performed on the original master recording of the Song, and the lead featured singer on the original master recording of the Song is not even a Plaintiff. Accordingly, there be substantial issues concerning Plaintiffs' standing to assert such a claim even if one were to exist.

Moreover, the First Amendment protects commercial actors' use of a song in a work where such use is related to the content of the work and is not a disguised commercial advertisement for the misleading sale of the commercial actors' goods or services.

5

Parks v. LaFace Records, 329 F.3d 437, 461 (6th Cir. 2003). Here, the Game is an expressive artistic work entitled to First Amendment protection because the Game contains significant transformative elements and is not likely to interfere with the economic interest protected by the right of publicity, even if such a right applies to a "distinctive sound" and if Plaintiffs had made a showing that their sound is unique or distinctive such that it has a specific value.

Also, the Copyright Act pre-empts Plaintiffs' purported state law right of publicity claim. A state law cause of action is preempted by the federal Copyright Act if: (1) the work involved falls within the "subject matter" of the Copyright Act; and (2) the rights that a plaintiff asserts under state law are "rights that are equivalent" to those protected by the Copyright Act. Kodadek v. MTV Networks, Inc. 152 F.3d 1209, 1212 (9th Cir. 1998). Here, Plaintiffs' "identity" claims to the sound of the Song are essentially claims regarding the licensing of a copyrighted work, falling squarely within the "subject matter" of the Copyright Act. Moreover, Plaintiffs' right of publicity claim, as pleaded, arises from Defendants' arrangement and production of musical and vocal performances that allegedly sound similar to those embodied and reflected in a copyrighted sound recording released by The Romantics in 1980, as distinct from the sound of any individual's voice or musical performance existing separate and apart from a copyrighted work. Thus, the rights asserted by Plaintiffs are "rights equivalent" to those protected by the Copyright Act under Michigan law. Wrench LLC v. Taco Bell Inc., 256 F.3d 446, 455 (6th Cir. 2001) ("Equivalency exists if [the state law right] may be abridged by an act which in and of itself would infringe one of the exclusive rights [granted by the Copyright Act]"); Sinatra v. Goodyear Tire & Rubber Co., 435 F.2d 711,

716 (9th Cir. 1970) (rejecting plaintiff's right of publicity claim based on her purportedly unique sound in performing copyrighted song).

In addition, sections 106 and 114(b) of the Copyright Act permit the owner of a copyright in a musical composition to license others to make specified commercial uses of the composition. This expressly allows third parties such as Defendants to make a sound-alike recording of a song. Further, the Copyright Act, 17 U.S.C. § 114(b), expressly disallows any recourse for such sound-alike recordings of a song.

As Defendants possess a valid synchronization license, they have the right to make their own recording of the Song to integrate into the Game without violating Plaintiffs' right of publicity.

### 2. Lanham Act

Plaintiffs have not made the requisite showing that there is a likelihood of success on the merits for their claim of false endorsement in violation of the Lanham Act. Defendants have made no trademark use of the name of "The Romantics," using the name merely in the body of the Game to accurately identify the group that made the song famous, and Defendants have not sought to pass off the Song as the original recording by The Romantics. The use of the Song does not constitute either an express or implied endorsement of the Game by the Plaintiffs. In addition, the Plaintiffs did not submit any evidence that a substantial number of ordinarily prudent customers of the Game were deceived about whether The Romantics or Plaintiffs sponsored the Game.

A musical composition such as the Song cannot be protected as its own trademark under the Lanham Act. See, e.g., Butler v. Target Corp., 323 F.Supp.2d 1052, 1059 (C.D. Cal. 2004). In addition, the Lanham Act has been held not to permit a

7

plaintiff to state a Lanham Act claim predicated on the use of an allegedly distinctive "signature" sound recording.  See Oliveira v. Frito-Lay, Inc., 251 F.3d 56, 62-63 (2d Cir. 2001).  Moreover, the Game is a tangible good, and protection of the underlying "sound" captured in it exceeds the scope of the Lanham Act.  See generally Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 37 (2003).

Additionally, a defendant's use of a plaintiff's identity in an expressive work is protected under the First Amendment where it is related to the content of the work, rather than a disguised commercial advertisement for the misleading sale of the defendant's goods or services.  Parks, 329 F.3d at 461.  Thus even if Plaintiffs can demonstrate that the Song is entitled to trademark protection under the Lanham Act, their trademark claim would fail because (a) Defendants' use of a re-record of the Song was intended and necessary to create a realistic experience of playing Plaintiffs' song, surpassing the minimum threshold of artistic relevance necessary to the game's content; and (b) the use of the Song does not mislead consumers as to the content or source of the Game.

The reference to the name of "The Romantics" during the play of the Game -- in the disclaimer language "as made famous by The Romantics" -- is a non-infringing use of "The Romantics," and even if that were not so, an accurate reference to the name of the group in this context would be permissible and immune from liability under the "nominative use" doctrine.  See generally New Kids on the Block v. News America Pub., Inc., 971 F.2d 302 (9th Cir. 1992).

### 3. Unfair Competition

Plaintiffs have not made the requisite showing that there is a likelihood of success on the merits for their state law claim for unfair competition. Under Michigan law, a court analyzes a claim for unfair competition in the same manner as it analyzes claims under the Lanham Act. Wynn Oil Co. v. American Way Service Corp., 943 F.2d 595, 605 (6th Cir. 1991). For the reasons set forth above, Plaintiffs have not made a showing of a likelihood of success on their Lanham Act claim, and therefore they cannot make a showing of a likelihood of success on their claim for unfair competition.

**B.     Plaintiffs Cannot Demonstrate Any Irreparable Injury.**

Because injunctive relief "is an 'extraordinary remedy,' a court will not invoke its injunctive powers unless the movant has met its burden of proof regarding irreparable harm." McDonald's Corp. v. Burger King Corp., 87 F. Supp. 2d 722, 725 (E.D. Mich. 1999). An irreparable injury is an injury that "cannot be undone through monetary remedies" and, as a general rule, "a preliminary injunction is an inappropriate remedy where the potential harm to the movant is strictly financial." Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1382 (6th Cir. 1995). The potential harm "must be 'actual and imminent,' and not merely remote or speculative." Fox v. Massey-Ferguson, Inc., 172 F.R.D. 653, 680 (E.D. Mich. 1995); aff'd 91 F.3d 143 (6th Cir. 1996); Center for Biological Diversity v. Lueckel, 248 F. Supp. 2d 660, 669 (W.D. Mich. 2002) ("to justify injunctive relief, there must be a 'substantial threat of impending injury'"), aff'd 417 F.3d 532 (6th Cir. 2005), McDonald's, 87 F. Supp. 2d at 725 ("any claimed irreparable harm must be 'imminent,' . . . with a 'substantial threat of impending injury'"). Preliminary injunctive relief is thus inappropriate where monetary relief is sufficient. Taubman v. Webfeats, 319 F.3d 770, 778 (6th Cir. 2003)

9

Plaintiffs have made no showing that monetary relief is insufficient. Defendants, on the other hand, can show enormous and irreparable harm if an injunction were granted. Because Plaintiffs have demonstrated no irreparable harm, Plaintiffs have failed to meet their burden on this essential prong of the preliminary injunction analysis.

**C.    Granting Plaintiffs' Preliminary Injunction Would Cause Substantial Harm to Defendants and Others**.

While the harm Plaintiffs complain of is speculative, the issuance of an injunction would injure Defendants in an actual, imminent, and irreparable manner. An injunction would encroach upon Defendants' First Amendment rights to create the Game, and Defendants will suffer enormous financial impact if the injunction is granted. The holiday season is historically the most important season for video game sales and represents a significant percentage of Activision's annual revenues. An injunction at this time of year may be especially harmful since seasonal sales, if not made at the time, may be lost forever. Furthermore, due to the public nature of this case, an injunction could irreparably harm Activision's substantial goodwill and tarnish its reputation in both the music industry and the general public. Finally, Plaintiffs have made no showing that they are willing or able to post the substantial bond required by law to support the issuance of the injunction. Fed. Rule Civ. Proc. 65(c).

**D.    Plaintiffs Have Failed to Show a Preliminary Injunction Will Serve the Public Interest.**

Plaintiffs have failed to demonstrate any manner in which an injunction would serve the public interest. To the contrary, a preliminary injunction could harm the public interest if Defendants were prohibited from or punished for relying on valid licenses and

established legal principles to create their Game. Any such order would undermine the reasonable expectations of commercial actors who rely on copyright licenses. Furthermore, a preliminary injunction would impinge upon the Defendants' First Amendment rights to create works of artistic expression.

**III. Conclusion**

For the foregoing reasons, Plaintiffs' motion is DENIED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: January 22, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 22, 2008, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager