UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE ROMANTICS a/k/a MASTER BEAT,
INC.; WALLY PALMAR; MIKE SKILL; and
COZ CANLER,

        Plaintiff(s),

v.

ACTIVISION PUBLISHING, INC.;
REDOCTANE, INC.; and WAVEGROUP
SOUND,

        Defendant(s).

_____/

Case No. 07-14969

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT [48] AND DENYING PLAINTIFFS' CROSS-MOTION FOR PARTIAL
SUMMARY JUDGMENT [57]**

Plaintiffs The Romantics a/k/a Master Beat, Inc., Wally Palmar, Mike Skill, and Coz

Canler filed this action against Defendants Activision Publishing, Inc., RedOctane, Inc., and

WaveGroup Sound.[1]  Plaintiffs assert four causes of action: violation of their right of

publicity (Count I), false endorsement under the Lanham Act (Count II), unfair competition

(Count III), and unjust enrichment (Count IV).  Defendants argue that Plaintiffs cannot

establish a prima facie case for any of their claims, that the claims are preempted by the

First Amendment, and that the right of publicity claim is preempted by the Copyright Act.

_____

[1]Plaintiffs voluntarily dismissed Harmonix Music Systems, Inc. as a defendant.  (Docket
Text # 11.)

This matter comes before the Court on the parties' cross-motions for summary judgment.[2] For the reasons set forth below, Defendants' motion is GRANTED, and Plaintiffs' motion is DENIED.

## I. Facts

### A. Defendants and the Game

The basis of this lawsuit is Defendants' use of the musical composition "What I Like About You" (written and originally recorded in 1979 by The Romantics and published in 1980) (the "Song") in the video game "Guitar Hero Encore: Rock's the 80's" ("the Game"). The Game is a part of the "Guitar Hero" video game franchise, which includes a series of games, guitar shaped game controllers, accessories, and merchandise under the "Guitar Hero" trademark. This franchise has been very successful, winning numerous accolades and becoming the top selling franchise for console video games as of September 2007.

The Game allows players to pretend they are playing guitar in a rock band. Play begins as players choose among options such as character, costume, and model of guitar, and then simulate the guitar play of various songs by correctly timing the pressing of fret buttons and strum bars on a guitar-like controller. The Game includes thirty songs from the 1980's to add to the realistic experience of playing in a rock band from that era. Each song in the Game has a level of difficulty, and only after reaching a certain proficiency on a song can a player advance to another more difficult song. The graphic video elements of the Game require complex synchronization with each song to enable the realistic simulation of guitar play.

---

[2]Defendants seek summary judgment on all claims. Plaintiffs seek summary judgment only as to their right of publicity and unfair competition claims.

Defendant Activision Publishing, Inc., the distributor of the Game and the parent of Defendant RedOctane, Inc., the publisher of the Game, obtained a valid nonexclusive synchronization license from EMI Entertainment World, Inc., the owner of the copyright in the Song. A synch license, in the context of a video game, permits Defendants to make a new recording of the underlying composition and to use that recording in synchronization with visual images in the video game to enable game play. In accordance with this license, Defendant WaveGroup Sound recorded a new version of the Song which was incorporated, or synchronized, into the Game. The Game was commercially released in July 2007.

While playing the Game, a player can encounter the Song or any reference to The Romantics only if the player obtains an advanced player status. Theoretically, a player could play the Game and never reach the advanced level of play necessary to encounter the Song, which is among thirty tracks included in the Game. If and when a player encounters the Song, it is clearly identified by the Song title and the words "as made famous by The Romantics," which informs players and onlookers that The Romantics are not actually performing the Song. Defendants never have used the Song for the purpose of advertising or marketing the Game, and neither the name The Romantics nor any of the names of individual Plaintiffs appear on the product packaging.

**B.     Plaintiffs and The Song**

Plaintiffs Wally Palmar, Mike Skill, and Coz Canler are current members of the rock band The Romantics. The Romantics created the original master recording embodying the Song in 1979, which was released in 1980. Not all Plaintiffs participated in the master recording of the Song, and the lead singer on the master recording of the Song is no longer

with The Romantics, nor is he a party to this action.  Plaintiffs do not allege that they currently own any rights in the Song.

The Song has appeared ubiquitously in popular culture for the past two decades and is frequently used in commercials and films.  Plaintiffs contend that a substantial number of ordinarily prudent consumers of Defendants' Game have been, or are likely to be in the future, confused, deceived, or mistaken about whether Plaintiffs sponsored or endorsed the Game.

### C.  Procedural History

In November 2007, Plaintiffs sought a preliminary injunction to prevent the manufacture, distribution, sale, or marketing of the Game during the pendency of this case. The Court heard the motion on December 18, 2007 and denied the motion in an opinion and order dated January 22, 2008.  (Docket Text # 44.)  This matter is now before the Court on the parties' cross-motions for summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III.  Analysis

Plaintiffs have asserted four causes of action in this case: violation of their right of publicity (Count I), false endorsement under the Lanham Act (Count II), unfair competition (Count III), and unjust enrichment (Count IV). The Court will address each claim in turn.

### A.  Right of Publicity

Plaintiffs assert that "[w]henever a song is created, three distinct rights arise": (1) the right in the sound recording, (2) the publishing right (i.e. the right in the underlying musical composition), and (3) a "publicity right, which is derived from the particular sound of the singer or band's voices or sounds, with which they are often identified." (Pls.' Mot. at 4-5.) It is this so-called "publicity right" that forms the basis of Plaintiffs' first claim.

Defendants attack this claim on numerous fronts.  They argue that no such right exists under Michigan law and that the claim is preempted by the First Amendment and by the Copyright Act.  The Court will address each argument separately.

### 1.  Right of Publicity Under Michigan Law

Plaintiffs' right of publicity claim is governed by state law.  *Parks v. LaFace Records*, 329 F.3d 437, 459 (6th Cir. 2003).  Michigan has recognized a general right to publicity. *See, e.g., Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831, 834 (6th Cir. 1983) (suggesting that Michigan courts would adopt the right of publicity and noting that Michigan has recognized a right of privacy); *Tobin v. Mich. Civil Serv. Comm'n*, 331 N.W.2d 184, 189 (Mich. 1982) (recognizing protection against "[a]ppropriation, for the defendant's advantage, of the plaintiff's name or likeness").  Michigan never has recognized, however, a right of publicity in the sound of a voice, even if distinctive, nor has it recognized a right of publicity in a combination of voices.  In fact, in a case cited by Plaintiffs, the Michigan Court of Appeals held that "no cognizable tort for negligent misappropriation of an unknown singer's voice exists in Michigan."  *Edwards v. Church of God in Christ*, No. 220348, 2002 WL 393577, * 2 (Mich. Ct. App. March 8, 2002).

In response, Plaintiffs take two tacks.  First, they attempt to analogize this case with *Carson*, where the Sixth Circuit held that the defendant appropriated Johnny Carson's identity, even though it didn't use his name, because the phrase "Here's Johnny" was associated with Carson's identity as a celebrity.  *Carson*, 698 F.2d at 837.  Plaintiffs argue that, similarly, their "distinctive sound" is an indicator of their identity.  The Court disagrees. In *Carson*, the court concluded that the phrase "Here's Johnny" was tantamount to a name and, therefore, an identity.  *Id.* at 836.  As discussed above, however, while Michigan law

protects against the unauthorized use of a plaintiff's name or likeness, it does not recognize an analogous claim based on the sound of a voice, let alone the allegedly distinctive sound of a combination of voices.

Further, even if Michigan did recognize such a claim, Plaintiffs' claim still would fail. The *Carson* court explained:

> The right of publicity has developed to protect the commercial interest of celebrities in their identities. The theory of the right is that a celebrity's identity can be valuable in the *promotion of products*, and the celebrity has an interest that may be protected from the unauthorized *commercial exploitation* of that identity.

*Id.* at 835 (emphasis added). It is undisputed that in this case, Defendants make no reference to The Romantics or to individual Plaintiffs in the advertising of the Game; that it is possible to play the Game and never reach the level of play necessary to encounter the Song; and that when the Song is encountered in the Game, it is clearly identified by the Song title and the words "as made famous by The Romantics," thus informing players and onlookers that The Romantics are not actually performing the Song. In light of these facts, no reasonable juror could conclude that the Song was used to promote the Game or that Defendants commercially exploited Plaintiffs' identity.

Plaintiffs' second attempt to salvage this claim relies on two Ninth Circuit cases, *Midler v. Ford Motor Co.*, 849 F.2d 460 (9th Cir. 1988), and *Waits v. Frito-Lay*, 978 F.2d 1093 (9th Cir. 1992). To begin, these cases carry little, if any, persuasive force, as they interpret California law, which has no application to the instant case. *See Midler*, 849 F.2d at 463 (noting that the defendant had "committed a tort in California"); *Waits*, 978 F.2d at 1098 (noting that the plaintiff alleged a claim of misappropriation "under California law"). Additionally, the *Midler* court limited its holding to a situation where "a distinctive voice of

7

a professional singer is widely known and is deliberately imitated in order to sell a product,"
849 F.2d at 463, and the *Waits* court reiterated that the tort was available only when a
voice was distinctive and widely known, 978 F.2d at 1100.

Here, Plaintiffs have failed to establish that their "sound" is distinctive. The *Waits*
court explained that "[a] voice is distinctive if it is distinguishable from the voices of other
singers." 978 F.2d at 1101. Plaintiffs' claim here is based on "[t]he sound associated with
Plaintiffs' 'What I Like About You.'" (Pls.' Mot. at 9.) Yet not all Plaintiffs performed on the
original master recording of the Song, and the lead featured singer on the original master
recording of the Song is not a Plaintiff in this case. Thus, any sound associated with the
recording of the Song cannot be distinctive to Plaintiffs, as defined by the Ninth Circuit.

Plaintiffs' claim, rather than being analogous to *Midler* and *Waits*, is more similar to
the claim made in *Sinatra v. Goodyear Tire & Rubber Co.*, 435 F.2d 711 (9th Cir. 1970).
In that case, Nancy Sinatra sued the defendant based on its use in an advertising
campaign of the song "These Boots Are Made For Walkin'," a song made famous by
Sinatra. *Id.* at 712. Sinatra alleged that the defendant selected a singer whose "voice and
style was deliberately intended to imitate" her own. *Id.* The *Sinatra* court stated:

> [A]ppellant's complaint is not that her sound is uniquely personal; it is that the
> sound in connection with the music, lyrics and arrangement, which made her
> the subject of popular identification, ought to be protected. . . . One wonders
> whether her voice, and theatrical style, would have been identifiable if
> another song had been presented, and not "her song", which unfortunately
> for her was owned by others and licensed to the defendants.

*Id.* at 716.

Similarly, Plaintiffs in this case assert that the "sound associated with Plaintiffs'
'What I Like About You' is part and parcel of who they are as entertainers." (Pls.' Mot. at

9.)  Their claim is therefore that their "sound in connection with the music, lyrics and arrangement" is distinctive.  Plaintiffs have presented no evidence that their sound is identifiable separate from the Song.  The Court therefore reaches the same conclusion as the *Sinatra* court and holds that Plaintiffs' claim must fail.

### 2.    First Amendment

Defendants also argue that even if Plaintiffs had asserted a cognizable claim under Michigan law, that claim must fail because it is preempted by the First Amendment.  The Court agrees.

The First Amendment protects expressive works from right of publicity actions unless the use of the plaintiff's identity (or, in this case, distinctive sound) "is 'wholly unrelated' to the content of the work or was 'simply a disguised commercial advertisement for the sale of goods.'"  *Parks*, 329 F.3d at 461 (citing *Rogers v. Grimaldi*, 875 F.2d 994, 1004 (2d Cir. 1989)).  A threshold question, then, is whether the Game constitutes an expressive work.

Numerous courts have held that video games are expressive works protected by the First Amendment.  *See, e.g., James v. Meow Media, Inc.*, 300 F.3d 683, 696 (6th Cir. 2002) (holding that the First Amendment protects communicative aspects of video games); *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 444 F. Supp. 2d 1012, 1039 (C.D. Cal. 2006) (holding that a video game "clearly qualifies as an 'artistic work' entitled to First Amendment protection"); *Video Software Dealers Ass'n v. Maleng*, 325 F. Supp. 2d 1180, 1184 (W.D. Wash. 2004) (holding that the video games at issue "are expressive and qualify as speech for purposes of the First Amendment").  Plaintiffs argue that the Game in this case is distinguishable from the games in the cited cases because "the Game involves no complex story line.  There is no script, no story board, no character development and no dialogue."

(Pls.' Mot. at 12.) Ultimately, Plaintiffs conclude that "[t]his lack of creativity is what distinguishes Defendants' Game from the video games that courts have determined deserve First Amendment protection." (*Id.* at 11.)

This argument ignores the fact that the Game allows players to select a character, costumes, and model of guitar to be used by the character on screen. (Matsushita Decl., Docket Text # 51 ¶ 4.) Additionally, one mode of the game allows players to start off playing small venues and to advance to progressively larger venues, a progression that parallels the path of an up-and-coming band. (*Id.*) When game play begins, a stylized display of a rock concert appears, with an audience, stage, band, lighting, and stage effects. (*Id.* ¶ 5.) The creation of the Game takes anywhere from six to twelve months and includes choosing a theme; designing graphic characters, locations, and instruments; selecting songs; synchronizing the songs with graphic elements to enable game play; game testing; and game production. (*Id.* ¶ 8.) The Game therefore allows players to customize their game play experience, contains large amounts of original artwork, and requires complex synchronization so that the audio and visual elements of the Game line up with a player's manipulation of the controller. Accordingly, the Court rejects Plaintiffs' conclusion that the Game lacks creativity and holds that the Game is an expressive artistic work that is entitled to First Amendment protection.[3]

---

[3]The amount of original creative elements designed by Defendants to create the Game makes this case easily distinguishable from *Estate of Presley v. Russen*, 513 F. Supp. 1339 (D. N.J. 1981), a case heavily relied upon by Plaintiffs. In that case, the court held that a theatrical performance involving an Elvis impersonator was not entitled to First Amendment protection. *Id.* at 1359. In support of its decision, the court stated that "entertainment that is merely a copy or imitation, even if skillfully and accurately carried out, does not really have its own creative component and does not have a significant value as pure entertainment." *Id.* As discussed in the body of this opinion, however, the Game is not

The next question is whether Defendants' use of the Song is "is 'wholly unrelated' to the content of the work or was 'simply a disguised commercial advertisement for the sale of goods.'" *Parks*, 329 F.3d at 461. Given that the purpose of the Game is to allow players to pretend they are in a rock band, the Song is not wholly unrelated to the content of the work. And as discussed above, neither the song nor Plaintiffs are referenced in the Game's advertising, and it is possible to play the Game and never encounter the Song. Thus, the Song cannot be "a disguised commercial advertisement."

The Court therefore holds that Defendants' use of the Song is protected by the First Amendment. This provides another basis by which Plaintiffs' right of publicity claim must fail.

### 3.    Copyright Act

In addition to the above arguments, Defendants assert that Plaintiffs' claim is preempted by the Copyright Act. The Act states in relevant part:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title. . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). Stated differently, to avoid preemption, a plaintiff must "state[] a claim of invasion of personal, state-law rights that are distinct from copyright protections." *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 623 (6th Cir. 2000). Thus, the relevant

---

"merely a copy or imitation," but contains numerous independent creative elements. Accordingly, *Estate of Presley* is not on point.

inquiry is whether Plaintiffs' asserted right in their "distinctive sound" is distinct from copyright protections.

As Plaintiffs explain in their brief, the Song implicates two separate rights under the Copyright Act. (Pls.' Mot. at 4-5.) First is the right in the sound recording, 17 U.S.C. § 102(a)(7), and second is the right in the underlying musical composition, 17 U.S.C. § 102(a)(2). Defendants argue that Plaintiffs' right of publicity claim is really a claim regarding the licensing of the copyright in the sound recording of the song. (Defs.' Mot. at 13-17.) Since this claim is not distinct from copyright protections, Defendants argue, it is preempted.

The Court agrees. Plaintiffs' claim, as pleaded, arises from Defendants' arrangement and production of musical and vocal performances that allegedly sound similar to those embodied and reflected in a copyrighted sound recording (the Song). Indeed, Plaintiffs' claim is premised upon Defendants' alleged use of their "distinctive sound," which Plaintiffs describe as "[t]he sound associated with Plaintiffs' 'What I Like About You.'" (Pls.' Mot. at 9.) Additionally, Plaintiffs state that they "are identified with the *Song's* distinctive sound." (*Id.* at 4) (emphasis added). It is also telling that Plaintiffs' musicologist compared Defendants' version of the song with the sound recording by Plaintiffs. (Docket Text # 25, Attachment 4.) He did not analyze Plaintiffs' voices or "sound" separate from the Song. In fact, the musicologist stated that the purpose of his report was to examine "possible copying by [Defendants] from *the sound recording* by The Romantics of [the Song]." (*Id.* ¶ 4) (emphasis added). He concluded that Defendants have "attempted to reproduce The Romantics [sic] *sound recording.*" (*Id.* ¶ 22) (emphasis added).

Plaintiffs' claim is therefore based on their sound "in connection with the music, lyrics, and arrangement [of the Song], which made [them] the subject of popular identification." *Sinatra*, 435 F.2d at 716. This asserted right, the right of the Song's "sound" as embodied in the sound recording, is equivalent to the right in a sound recording protected by the Copyright Act at 17 U.S.C. § 102(a)(7).[4] As a result, Plaintiffs' claim is preempted.

Notwithstanding the fact that Plaintiffs have not asserted a claim based on the Copyright Act, the parties make arguments based on that Act's provisions. Plaintiffs concede that the synch license gives Defendants the right to perform the musical composition without infringing the copyright. But Plaintiffs argue that Defendants also were required to obtain a license for the sound recording copyright. In support, Plaintiffs cite to *Bridgeport Music, Inc. v. Still N the Water Publishing*, 327 F.3d 472, 481 n.1 (6th Cir. 2003), where the court stated that "[u]nder copyright law, an entity wishing to synchronize music with visual images . . . must obtain a synchronization license from the musical composition copyright holder and must also obtain a license from the sound recording copyright holder." Plaintiffs fail to appreciate that the defendant in *Bridgeport Music* used the actual master sound recording; thus, the defendant was required to obtain a license from the sound recording copyright holder. *Id.* at 475. Here, in contrast, Defendants did not use the

---

[4]Plainitffs' claim is categorically different than the claim at issue in *Landham*, based on the plaintiff's "personal identity," which the court described as "an inchoate 'idea' which is not amenable to copyright protection" and as "a right separate from those protected by the Copyright Act." 227 F.3d at 623. Here, in contrast, Plaintiffs' claim is based on a right that *is* protected by the Copyright Act - the right of a song's "sound." *Landham* is therefore not on point.

original recording; therefore, they were not required to obtain a license from the sound recording copyright holder.

In any event, Plaintiffs' argument is based on Defendants' failure to obtain a license from the sound recording copyright holder.  Yet Plaintiffs turn around and argue that 17 U.S.C. § 114(b) does not apply, even though that provision deals explicitly with the rights of a sound recording copyright holder.  Specifically, the provision expressly disallows any recourse for a sound-alike recording of a song: "The exclusive rights of the owner of copyright in a sound recording . . . do not extend to the making or duplication of another sound recording that consists entirely of an independent fixation of other sounds, *even though such sounds imitate or simulate those in the copyrighted sound recording.*"  *Id.* (emphasis added).  Plaintiffs even cite a case that held, "A performing group that make a recording that attempts to imitate the style of another performing group's recording does not violate any rights in a sound recording copyright."  *Griffin v. J-Records*, 398 F. Supp. 2d 1137, 142 n.14 (E.D. Wash. 2005).

Thus, even had Plaintiffs made a claim under the Copyright Act, the claim would fail, for Defendants' synch license gives them the right to make their own recording of the Song to integrate into the Game without violating Plaintiffs' right of publicity.

Plaintiffs' right of publicity claim fails for numerous reasons: no such right exists under Michigan law, Defendants' use of the song is protected by the First Amendment, and the claim is preempted by the Copyright Act.  For all of these reasons, Defendants' motion for summary judgment is GRANTED and Plaintiffs' cross-motion for summary judgment is DENIED with respect to Plaintiffs' right of publicity claim.

### B.    False Endorsement Under the Lanham Act and Unfair Competition

Plaintiffs also assert claims under the Lanham Act and for unfair competition.  Under Michigan law, the analysis is the same for these types of claims and is therefore consolidated for purposes of this opinion.  *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 605 (6th Cir. 1991).  Defendants argue that Plaintiffs' claims must fail because they are preempted by the First Amendment and because Plaintiffs cannot make out a prima facie case.  The Court will address each argument in turn.

### 1.    First Amendment

The Sixth Circuit applies the *Rogers* test to Lanham Act claims.  *See Parks*, 329 F.3d at 451-52 ("*Rogers* is the best test for balancing Defendants' and the public's interest in free expression under the First Amendment against [Plaintiff's] and the public's interest in enforcement of the Lanham Act.").   Under this test, "the Lanham Act should be applied to artistic works only where the public interest in avoiding confusion outweighs the public interest in free expression. . . . [T]he public interest in free expression should prevail if the use of the celebrity's image has artistic relevance, unless it is used in such a way that it explicitly misleads as to the source of the work."  *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 928 (6th Cir. 2003).

The Court already has addressed the artistic merits of the Game and concluded that it is entitled to First Amendment protection.  The question thus becomes whether Defendants use the Song in a way that explicitly misleads the public as to its source. Neither the Game nor any of its promotional materials "contains [any] explicit indication that [Plaintiffs] endorsed the [Game] or had a role in producing it."  *Rogers*, 875 F.2d at 1001 (holding that a film titled "Ginger and Fred" did not explicitly mislead consumers into believing that Ginger Rogers endorsed or approved of the film).   Further, "consumers are

not exposed to the [Song] until after they purchase and play the Game.  Even then, there is no guarantee that a consumer will actually [encounter] the [Song]."  *E.S.S. Entertainment*, 444 F. Supp. 2d at 1044, 1048 (holding that video game maker "defendants have met both requirements of the *Rogers* balancing test [and] are entitled, as a matter of law, to a First Amendment defense to plaintiff's Lanham Act claims").  And if a consumer does encounter the Song, it is described "as made famous by The Romantics," which informs the consumer that the version of the Song in the Game is not performed by The Romantics.  (*See* Compl. ¶ 12.)

These facts illustrate that Defendants' use of the Song does not explicitly mislead the public as to the Song's source.  Accordingly, under *ETW*, Defendants' use is protected by the First Amendment.

### 2.     Prima Facie Case

Plaintiffs' claim arises under section 43(a) of the Lanham Act, which prohibits the use of:

> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a).  Defendants argue that Plaintiffs cannot establish two necessary elements of a Lanham Act claim: use of a mark and likelihood of consumer confusion.  The Court will address each argument separately.

### a.     Use of a Mark

As discussed above, Defendants have not used a false designation of origin with respect to the Song.  Thus, to prevail on their Lanham Act claim, Plaintiffs must show that

Defendants improperly used a "word, term, name, symbol, or device." Plaintiffs argue that an artist's distinctive sound or voice can serve as the basis for a Lanham Act claim. In support, Plaintiffs cite a number of cases, only two of which actually address an artist's voice or sound.

In *Waits*, 978 F.2d at 1106-07, the Ninth Circuit held "that false endorsement claims, including those premised on the unauthorized imitation of an entertainer's distinctive voice, are cognizable under section 43(a)." The Court already has concluded, however, that under *Waits*, Plaintiffs' sound is not distinctive. *See supra* at 8. Thus, given that the *Waits* court limited Lanham Act claims to distinctive voices, that case is of no help to Plaintiffs.

Plaintiffs also cite the unpublished case of *Tin Pan Apple, Inc. v. Miller Brewing Co.*, No. 88 Civ. 4085, 1994 WL 62360 (S.D.N.Y. Feb. 24, 1994). In that case, the plaintiffs' a Lanham Act claim was based on their allegation that the defendants copied their distinctive sound and appearance. *Id.* at *6. The court concluded that summary judgment was not appropriate because "[w]hether or not defendants deliberately copied services covered by the plaintiffs' registered trademark poses a genuine issue as to a fact that is material." *Id.* First, given that this is an unpublished decision from another circuit, its persuasive value is limited. Second, and far more importantly, the Second Circuit (in which the Southern District of New York sits) subsequently held that "the law does not accord [an artist] trademark rights in the recording of her signature performance. Plaintiff has not cited a single precedent throughout the history of trademark supporting the notion that a performing artist acquires a trademark or service mark signifying herself in a recording of her own famous performance." *Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 62 (2d Cir. 2001).

This holding calls into question the continued viability of *Tin Pan Apple* and makes clear that the law of the Second Circuit does not support Plaintiffs' Lanham Act claim.

Plaintiffs have failed to provide authority to establish that their sound can serve as a mark for purposes of the Lanham Act, and "a musical composition cannot be protected as its own trademark under the Lanham Act. . . . Concluding that a song can serve as an identifying mark of the song itself would stretch the definition of trademark-and the protection afforded under § 43(a)-too far and give trademark law a role in protecting the very essence of the song, an unwarranted extension into an area already protected by copyright law." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 64 (2d Cir. 2000). Plaintiffs therefore have failed to establish that Defendants improperly used "any word, term, name, symbol, or device," and their Lanham Act claim must fail.

### b.    Likelihood of Consumer Confusion

Even if Plaintiffs had made the first required showing, they have failed to offer admissible evidence to establish that Defendants' use of the Song "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a). For this prong of the test, "[t]he underlying question to be answered is whether the plaintiff has shown that the public believe[s] that the mark's owner sponsored or otherwise approved of the use of the trademark." *Landham*, 227 F.3d at 626. The Sixth Circuit considers eight factors to determine the likelihood of confusion: (1) strength of plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5)

marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.* at 626-27. Plaintiffs' argument rests solely on the fourth factor, evidence of actual confusion. (Pls.' Mot. at 16.)

In support, Plaintiffs offer two affidavits. The first is from Plaintiff Wally Palmar, in which he states that "fans informed us that they had heard The Romantics' performance of the Song on the [Game]." (Pls.' Mot., Ex. A ¶ 5.) These alleged statements from fans are textbook hearsay, and "evidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded." *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007). This portion of Palmar's affidavit therefore will not be considered by the Court.

The second affidavit is from Plaintiffs' own attorney, Michael A. Novak. (Pls.' Mot., Ex. B.) Mr. Novak states that *he* thought the version of the Song that appears in the Game was performed by Plaintiffs. This self-serving affidavit is not only entitled to little (if any) weight, but it establishes only a single instance of confusion. And this Court previously held that "[o]ne isolated incident of actual confusion . . . supports the inference that there is *no* likelihood of confusion." *Cosmetic Dermatology and Vein Ctrs. of Downriver P.C. v. New Faces Skin Care Ctrs. Ltd.*, 54 U.S.P.Q.2d 1250, 1259 (E.D. Mich. 2000) (emphasis added); *see also Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1120 (6th Cir. 1996) ("minimal or isolated instances of actual confusion are, obviously, less probative than a showing of substantial actual confusion"); J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23.14 (4th ed. 2008)

("Evidence of only a small number of instances of actual confusion can be dismissed as inconsequential or *de minimis.*").

Plaintiffs provide no other evidence of actual confusion. Plaintiffs filed this suit over nine months ago, yet they have not provided the Court with a single affidavit from a confused consumer. Thus, given that Plaintiffs rely solely on evidence of actual confusion to support their Lanham Act claim, the claim must fail.[5]

Defendants' use of the Song is protected by the First Amendment, and Plaintiffs cannot establish a Lanham Act violation. Accordingly, Defendants' motion for summary judgment is GRANTED with respect to Plaintiffs' Lanham Act and unfair competition claims, and Plaintiffs' cross-motion for summary judgment is DENIED with respect to their unfair competition claim.[6]

## C.    Unjust Enrichment

Under Michigan law, "[t]he elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993). In this case, Plaintiffs have not established that Defendants received a benefit *from* them. Further, any benefit enjoyed by Defendants in

---

[5]Plaintiffs also argue that Defendants have "falsely represented to the world that The Romantics are on the Game." (Pls.' Mot. at 16-17.) In support, Plaintiffs provide a screenshot of a fan blog (Ex. H) and a screenshot of Amazon.com (Ex. I). Questions of authentication and hearsay aside, Plaintiffs offer no evidence that Defendants exercise control over online postings made by individuals or by online retailers. Thus, Plaintiffs have failed to establish that Defendants are in any way responsible for the representations at issue.

[6]Plaintiffs did not seek summary judgment on their Lanham Act claim.

this case will not result in an inequity to Plaintiffs, as Defendants are legally entitled to use the Song in the Game. Accordingly, Defendants' motion for summary judgment is GRANTED with respect to Plaintiffs' unjust enrichment claim.

## IV. Conclusion

For the above-stated reasons, Defendants' motion for summary judgment is GRANTED, and Plaintiffs' cross-motion for partial summary judgment is DENIED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: August 19, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 19, 2008, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager